## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE

SHEILA V. CALTON )
)
V. ) NO. 2:14-CV-149
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's application for Disability Insurance Benefits under the Social Security Act was denied following an administrative hearing before an Administrative Law Judge ["ALJ"]. Plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 13], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 15].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 50 years of age on her alleged disability onset date of April 6, 2011. She has a limited education. There is no dispute that she cannot do her past relevant work. Plaintiff alleges both severe physical and mental impairments. Her primary debilitating condition is severe asthma accompanied by COPD. A non-smoker, it has been medically opined that second hand smoke contributed to her condition. The full list of severe impairments found by the ALJ includes these breathing difficulties, allergic rhinitis, degenerative disease of the thoracic and lumbar spine, arthritis, and post left carpal tunnel release, along with severe mental impairments of anxiety and depression (Tr. 87).

The ALJ found that the plaintiff had the "residual functional capacity" ["RFC"] "to perform light work as defined in 20 CFR 404.1567(b) except no more than occasional climbing, stooping, kneeling, crouching, and crawling; no concentrated exposure to pulmonary irritants or hazards; and with the ability to perform and maintain attention and concentration for simple and detailed tasks and adapt to infrequent changes in a work setting." (Tr. 90). As noted by the defendant, and to the plaintiff's credit, plaintiff's issue with the RFC finding deals exclusively with an assertion that it does not adequately account for the effects of the plaintiff's asthma and COPD. Issue is not taken with the RFC regarding

2

the effect of the other severe physical impairments, or with the mental impairments of anxiety and depression. This report and recommendation will not address those conditions. If there is substantial evidence in the record to support the RFC finding, *and* if the ALJ followed the law and regulations in adjudicating the case, including his finding regarding plaintiff's credibility, the Court will be compelled to recommend that the Commissioner be affirmed.

The medical evidence is accurately summarized in the Commissioner's brief as follows:

> On December 14, 2010, Plaintiff's treating physician, Cynthia Poortenga, M.D., completed a medical assessment of ability to do physical work-related activity form (Tr. 240-41). Dr. Poortenga indicated Plaintiff could occasionally lift/carry 10 pounds maximum, stand/walk for a total of 20 minutes in an eight-hour day, and was unlimited in her ability to sit (Tr. 240). She also indicated that Plaintiff could never climb, crouch, or crawl, but could occasionally kneel, stoop, and balance (Tr. 241). Plaintiff's abilities to reach, handle, and push/pull were limited due to shortness of breath, but her abilities to feel, see, hear, and speak were unaffected (Tr. 241). Plaintiff also had environmental restrictions regarding heights, moving machinery, temperature extremes, chemicals, dust, fumes, and humidity due to lung disease with shortness of breath and asthma (Tr. 241).
>
> Dr. Poortenga also completed a mental medical assessment form and indicated that Plaintiff had fair abilities regarding understanding, remembering, and carrying out instructions; fair abilities in making occupational adjustments except for poor or no ability to deal with work stresses; and good abilities in making personal-social adjustments (Tr. 242-43).
>
> A chest x-ray taken on May 24, 2011, showed no acute of focal process with minimal old granulomas (Tr. 295). That same day, Plaintiff presented to Pulmonary Associates of Kingsport for a pulmonary consultation (Tr. 292). Plaintiff denied ever using tobacco, but stated that she was exposed to secondhand smoke most of her life and that her husband smoked but did so outside (Tr. 292). Plaintiff's lungs showed no wheezes, crackles, or rhonchi, but she had extremely diminished breath sounds even though she was not in any respiratory distress (Tr. 293). There was no cyanosis, edema, calf tenderness, or clubbing in the extremities (Tr. 293). Psychiatrically, Plaintiff was oriented, cooperative, and oriented (Tr. 293). Kevin Cornwell, M.D., diagnosed very severe COPD, asthma, lung nodules seen on x-ray, and increasing dyspnea (Tr. 294).
>
> A CT scan of Plaintiff's chest taken on May 31, 2011, showed no acute

findings with findings of old granulomatous disease (Tr. 276).

Plaintiff returned to Pulmonary Associates on June 7, 2011, and reported occasional wheezing and a productive cough (Tr. 290). She was recently on a tapering dose of Prednisone and reported improved symptoms with shortness of breath back to her baseline (Tr. 290). Plaintiff's lungs showed good bilateral breath sounds with no rales, rhonchi, or wheezing (Tr. 290).

Plaintiff had no new complaints on July 26, 2011, but reported she was bothered by allergies (Tr. 288). When asked about the reasons for her symptomatic asthma, Plaintiff stated that she had been feeding a relative's 13 cats and that she was allergic to cats (Tr. 288). On examination, Plaintiff had no wheezes but had diminished breath sounds (Tr. 288). Pulmonary function testing showed FVC (forced vital capacity) of 59%, FEV1 (forced expiratory volume in one second) of 40%, and FEV1/FVC percentage of 53 with reference of 80 which was worse than testing on June 7, 2011 (Tr. 288). Plaintiff stated that she wanted to avoid taking a recommended dose of Prednisone because it made her very anxious and also declined a steroid nasal spray (Tr. 289).

A medical report dated September 1, 2011, from The Regional Allergy, Asthma, and Immunology Center indicated that Plaintiff was referred by Pulmonary Associates for an evaluation of shortness of breath, wheezing, allergies, and asthma (Tr. 307). Plaintiff was in no acute respiratory distress and had a moderate amount of clear nostril drainage (Tr. 307). Her lungs were clear with somewhat prolonged expirations (Tr. 307). Muscular strength and neurological function were grossly normal (Tr. 308). W. Jan Kazmier, M.D., assessed moderate to severe persistent asthma, multifactorial with marked allergic but also exercise and cold air inducted components, perennial allergic rhinitis, seasonal allergic rhinitis, allergic conjunctivitis, aspirin intolerance, and a hiatal hernia (Tr. 308). The doctor recommended avoidance of asthma triggering factors, allergen immunotherapy or Xolair but Plaintiff was not interested in any injective form of treatment, and aspirin desensitization if asthma was not controlled satisfactorily (Tr. 308).

In a follow up visit to Pulmonary Associates on September 20, 2011, Plaintiff reported continued allergy symptoms with intermittent wheezing, coughing, and shortness of breath (Tr. 286). An ear, nose, and throat examination was unremarkable (Tr. 286). There were diminished breath sounds in the lungs with no crackles, rhonchi, or wheezes (Tr. 286). Plaintiff was instructed to discontinue using Primatene Mist and to use Proventil and nebulized Albuterol as needed (Tr. 287). Plaintiff did not have any of these medications and was given samples of Symbicort, Spiriva, and Ventolin (Tr. 287).

At her two-month follow up visit to Pulmonary Associates on November 21, 2011, Plaintiff reported that she had anterior chest discomfort for the past month and denied any history of cardiac disease (Tr. 311). She reported that using Primatene Mist made the feeling go away (Tr. 311). However, she reported that Proventil did not seem to help and nebulized albuterol seemed to help somewhat (Tr. 311). She also reported much less wheezing and coughing since she began using Spiriva and

4

Symbicort on a regular basis (Tr. 311). On testing, Plaintiff's FEV1/FVC percentage was 78 and 72 pre and post-bronchodilator with a reference of 80, which was much improved compared to testing in July, but the respiratory therapist also reported varied effort during testing (Tr. 312, 315). A chest x-ray showed granulomatous changes but no acute or focal process, no cardiac abnormality, and no bony abnormality (Tr. 314). Janice Ewing, FNP-BC, diagnosed asthma that was much better controlled, dyspnea and chest discomfort, and allergic rhinitis (Tr. 312).

A medical record from Dr. Poortenga dated November 28, 2011, indicated that Plaintiff's chief complaint was anxiety attacks (Tr. 317). A review of systems indicated that Plaintiff was doing well with regard to her respiratory system but experiencing shortness of breath with anxiety (Tr. 317). Plaintiff's cardiovascular, lungs, and extremities were normal (Tr. 317). The doctor noted increased anxiety with some mild depression but noted that she showed good judgment, good eye contact, and that she was smiling (Tr. 317).

On December 6, 2011, Plaintiff saw Kenton Goh, M.D., for a consultative disability examination (Tr. 318). Plaintiff complained of COPD, asthma, and arthritis in her back (Tr. 318). She reported that she did not use an assistive device, had no lumbar spine MRI, was not treated for pain due to an aspirin allergy, and had no back injections or history of back surgery but took Tylenol and used a heating pad (Tr. 318). Plaintiff was alert, oriented, and in no distress (Tr. 319). Her lungs were clear with no wheezes, rales, or rhonchi, and she was not dyspneic during the examination but her air exchange was moderate (Tr. 320). Plaintiff's back was not tender, was without spinous process deformities, and her extremities were normal (Tr. 320). Grip strength, lower and upper extremity strength, and flexor and extensor strength were normal 5+/5, and sensation was grossly intact except for some decreased sensation in the anterior right shin that Plaintiff attributed to a previous broken leg (Tr. 320). Plaintiff walked straight away with good speed and balance without an assistive device, and she was able to perform tandem, heel, and toe walk with moderate speed and moderate balance difficulty (Tr. 320). She could fully squat and hold the position for five seconds and rise back up with minor difficulty (Tr. 320). Dr. Goh diagnosed COPD and asthma, and arthritis of the back (Tr. 321). The doctor stated that she would expect Plaintiff to be able to sit for seven hours in an eight-hour day, stand or walk for six hours in an eight-hour day, and lift and carry 10 pounds frequently and up to 20 pounds occasionally (Tr. 321).

On December 13, 2011, Plaintiff underwent a consultative disability psychological evaluation with Shana V. Hamilton-Lockwood, Ph.D. (Tr. 331). Plaintiff reported that she lived with her husband, received spouse's income as an industrial cleaner, and had private health insurance (Tr. 331). She completed the eleventh grade and never had to repeat a grade but did report having to repeat courses (Tr. 332). She denied ever taking special education classes (Tr. 332). Plaintiff stated that she never had periods of inpatient hospitalization for mental health problems but had mental health treatment about 30 years earlier due to marital problems (Tr. 332). Her primary care doctor prescribed medication for anxiety and depression and she had been taking it for about three weeks (Tr. 332).

5

On examination, Plaintiff was oriented, alert, and maintained good eye contact with normal speech and clarity (Tr. 333). Her thought processes seemed clear and logical, she appeared capable of following instructions, and appeared to fall in the low average range of intellectual functioning (Tr. 333). Her reported activities of daily living included preparing simple meals, doing one load of laundry per week, cleaning the toilet, driving once every six months, and reading (Tr. 334). Dr. Hamilton-Lockwood diagnosed major depressive disorder, recurrent moderate; panic disorder with agoraphobia, and a global assessment of functioning (GAF) value of 50 to 55 (Tr. 335).

Non-examining state agency medical consultant, P. Stumb, M.D., reviewed the evidence on December 27, 2011, and found that Plaintiff's medical impairments resulted in medium level exertional limitations with additional postural and environmental limitations (Tr. 359-67). On March 12, 1012, state agency medical consultant, Frank Pennington, M.D., reviewed additional medical treatment evidence and affirmed the prior consultant's findings (Tr. 380).

Plaintiff returned to Dr. Kazmier on January 26, 2012, and was doing well with her asthma and allergy control (Tr. 375). A review of systems was negative as was a physical examination (Tr. 375). The doctor recommended continuing Plaintiff's current treatment (Tr. 375).

On March 19, 2012, Plaintiff saw Dr. Cornwell at Pulmonary Associates and reported that she "feels the best she has in several months" (Tr. 387). She had been taking Symbicort, albuterol, and Spiriva and denied any coughing (Tr. 387). Plaintiff was alert and oriented, in no apparent distress, and was very pleasant and cooperative (Tr. 387). She had good bilateral breath sounds, no cyanosis or edema of her extremities, and no focal deficits (Tr. 388).

When Plaintiff followed up at Pulmonary Associates on April 30, 2012, she reported "breathing much better than she had in years" and denied wheezing except sometimes when she lies down (Tr. 389). She denied any cough, fever, or chills (Tr. 389). Plaintiff's lungs showed no wheezing, crackles, rhonchi or use of accessory muscles, and her extremities showed no edema (Tr. 389). Plaintiff was oriented with appropriate affect (Tr. 389).

On September 4, 2012, Plaintiff reported feeling much better since taking Ventolin again and that she was not having to use a nebulizer as much (Tr. 400). She stated that her asthma was "controlled for the first time in her life, and she is not interested in pursuing any further treatment at this time" (Tr. 400). Plaintiff had no complaints (Tr. 400-02).

At her three-month follow up appointment on December 4, 2012, Plaintiff reported that she received a steroid shot from Dr. Kazmier in November and thought her breathing was different and she did not feel as good since that time (Tr. 397). She was not wheezing much and had no cough or increased shortness of breath but reported spells where it felt like the air had been "knocked out" of her (Tr. 397). Ventolin helped after 15 to 20 minutes (Tr. 397). A chest and lung examination was normal (Tr. 398).

Plaintiff again presented to Wellmont Medical Associates for a three-month

6

follow up appointment on May 22, 2013 (Tr. 412). She reported feeling better with minor complaints (shortness of breath on exertion, rest, talking, eating, coughing intermittently throughout the day with no sputum, sneezing, and watery and itchy eyes). A chest and lung examination was normal (Tr. 413). Plaintiff's mood and affect were also described as normal (Tr. 413). Ms. Ewing recommended that she continue her current treatment (Tr. 414).

[Doc. 16. Pgs 3-9].

Plaintiff's testimony at the administrative hearing is also accurately summarized by

the defendant as follows:

> Plaintiff appeared and testified before an ALJ at an administrative hearing on February 1, 2013 (Tr. 38). Plaintiff testified that she was born in September 1960, alleged disability beginning April 6, 2011, and had not worked since that date, had an eleventh grade education, and could read and write (Tr. 41-42).
> Plaintiff described lower back pain that radiated down her left leg two or three times a month (Tr. 43). She testified that she had COPD and asthma that caused shortness of breath with minimal activity such walking a short distance (Tr. 43, 49-50). Plaintiff testified that she had problems with both knees making it difficult to bend up or down, that she had carpal tunnel surgery on her left hand which did not help and that she did not have any feeling in her hand, and that she had a hernia and diverticulitis so she had to watch what she ate (Tr. 44). Plaintiff stated that she did not take any prescribed pain medications because she could not take certain medications, but she took extra strength Tylenol and used a heating pad (Tr. 45). Plaintiff testified that she could be on her feet only 30 minutes at a time and for only two or maybe three hours total during the day, and sit for only one hour total during an eight-hour day (Tr. 46, 49).
> Plaintiff testified that she also experienced depression and anxiety (Tr. 46). She stopped taking medications prescribed for these conditions due to the way they made her feel (Tr. 47). She had not had therapy or counseling for 10 or 12 years and was never been hospitalized for mental problems (Tr. 47). Plaintiff testified that her mental problems made it difficult to remember things, made her chest hurt when she became agitated, and did not like to be around people for long periods (Tr. 47).

[Doc. 16, pg. 10].

At the administrative hearing, the ALJ took the testimony of Dr. Norman Hankins, a

vocational expert ["VE"]. When Dr. Hankins was asked whether there were jobs which an

individual with the RFC set out above could perform, Dr. Hankins identified 143,347 jobs

7

in Tennessee and 6,567,071 in the nation (Tr. 52-53).

In his hearing decision, the ALJ found that the plaintiff had both physical and mental impairments as indicated above. He detailed the medical evidence from the plaintiff's treatment records. Those relating to plaintiff's respiratory problems are set out by date (Tr. 87). These include records from Dr. Poortenga, who of course gave the medical assessment. He noted particularly the improvement plaintiff showed with "clear lungs and normal breath sounds" when she used prescribed medications and inhalers.

He discussed the consultative physical examination administered by Dr. Goh on behalf of the Disability Determination Section. He noted that Dr. Goh stated that the plaintiff was not short of breath at any time during the examination, which included physical testing for her musculoskeletal complaints. He noted the pulmonary function testing revealed an "FEV1 of 2.14 (80% of predicted) post bronchodialator (Tr. 88).

After discussing the effects of the plaintiff's mental impairments, which are not at issue on this appeal, he stated his RFC finding set out hereinabove.. He noted that in arriving at that finding, he considered the objective medical evidence as well as the opinion evidence, and that he did so in accordance with the regulations and Social Security Rulings, including SSR 96-2p. He noted the process he would follow in evaluating plaintiff's subjective complaints. (Tr. 90).

He then stated that when he considered plaintiff's subjective complaints along with the medical evidence, he found that she was not entirely credible. Regarding her respiratory condition, he once again noted the significant improvement experienced when she used her medicine, including high oxygen saturation levels. He concluded that "while it is reasoanble

8

that the claimant should be restricted from working around pulmonary irritants, there is no evidence of decreased lung capacity or respiratory symptoms that would preclude light exertion." (Tr. 91).

He then evaluated the medical opinion evidence and the weight he assigned to the various reports. He gave great weight to Dr. Goh, who opined that plaintiff could, in spite of her severe respiratory difficulties, perform the exertional requirements of light work. He gave some weight to the State Agency non-examining physicians who had found the plaintiff capable of medium work, but gave plaintiff's subjective complaints and other medical records sufficient credence to find her only capable of light work. However, he did incorporate their postural and environmental restrictions into his RFC(Tr. 92).

Regarding Dr. Poortenga, he gave her physical assessment that plaintiff could only perform a reduced range of sedentary work little weight. He found that Dr. Poortenga's opinions were not "well supported" by the clinical findings and other medical evidence, including the findings of Dr. Poortenga herself and her conservative treatment of plaintiff (Tr. 92).

He found that the plaintiff could not return to her past relevant jobs, all of which required at least medium exertion (Tr. 93). Based upon Dr. Hankins' testimony, he did find that there was a substantial number of jobs which plaintiff could perform. Accordingly, he found that she was not disabled (Tr. 94-95).

Plaintiff asserts that the ALJ's RFC finding, and thus his question to the VE, and his ultimate determination that the plaintiff was not disabled was not supported by substantial evidence, and did not include all of the effects of plaintiff's impairments, "particularly her

9

attacks of asthma." [Doc. 14, pg. 8]. Plaintiff also asserts that the ALJ erred by giving little weight to Dr. Poortenga's opinion as a treating physician, and in his finding that plaintiff was not entirely credible.

With regard to the ALJ's findings regarding the effects of the plaintiff's impairments, especially her asthma, the ALJ stated the reasons for finding that she was capable of light work in an environment free of pulmonary irritants. Plaintiff's medical records do not indicate an invalid, and do show that her symptoms responded to prescribed treatment. The frequency of her visits do not support greater restrictions than those found by the ALJ. Also, the consultative exam and opinion of Dr. Goh totally support the ALJ's RFC finding. The ALJ "cut no corners," and was not trying to manufacture an opinion that would "stick." Of course, the Court understands that plaintiff's experienced counsel has in no way implied that he was. The Court merely wants the plaintiff to understand that the ALJ made every effort to be fair in his fact finding.

Since there was substantial evidence to support the ALJ's RFC finding, the Court also finds that there was no error in him finding that plaintiff's subjective complaints were not credible to the extent that they were inconsistent with the RFC. He explained in great detail the reason for both findings.

Finally regarding the lack of weight given to Dr. Poortenga, the ALJ cited contradicting, competent medical evidence that plaintiff was less restricted than Dr. Poortenga indicated. In fact, all of the other medical evidence, both by examining and non-examining sources, contradicts Dr. Poortenga's finding. The ALJ was aware of the deference to be given to the opinion of a treating doctor, but cited substantial evidence in both quantity

10

and quality for giving her opinion little weight.

There was substantial evidence to support the ALJ's RFC finding and the question to the VE. The ALJ committed no errors of law or procedure in adjudicating the plaintiff's claim. His findings lie withing the "zone of choice" in which the Court may not interfere. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 13] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 15] be GRANTED.[1]

Respectfully submitted,


 s/ Dennis H. Inman
United States Magistrate Judge

---

[1]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

11